# IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

Zamal'iah Asia-Unique Carter-el,         )
      Plaintiff,              )
                           )
v.                          )          1:19cv243 (TSE/MSN)
                           )
Sgt. Boyer,              )
      Defendant.        )

## MEMORANDUM OPINION

Virginia inmate Zamal'iah Asia-Unique Carter-el initiated this pro se civil rights action

pursuant to 42 U.S.C. § 1983, asserting that defendant Sergeant Alan Boyer ("defendant" or

"Sgt. Boyer") violated her "transgender rights" by subjecting her to a strip search. Dkt. No. 4.

Sgt. Boyer filed a motion for summary judgment in which he first argues that he did not impinge

on plaintiff's constitutional rights and second argues that, even if a constitutional violation

occurred, he is entitled to qualified immunity. Dkt. Nos. 10-11. Plaintiff received the notice

required by Local Rule 7(K) and an opportunity to file responsive materials pursuant to

Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) [Dkt. No. 12], but has failed to register any

opposition to defendant's arguments. For the reasons set forth below, defendant's search did not

violate plaintiff's constitutional rights, and, even assuming that it did, defendant is entitled to

qualified immunity. Accordingly, defendant's motion for summary judgment must be granted.

### I. Facts

The undisputed factual record establishes the following.[1] On September 5, 2018, plaintiff

was transferred from the Newport News Jail to Hampton Roads Regional Jail ("HRRJ"). Boyer

---

[1] The facts stated herein are derived from the record of admissible evidence, which includes the
affidavit of Sgt. Boyer [Dkt. No. 11-1] ("Boyer Aff."). Because plaintiff's complaint is

Aff. ¶ 5. Despite plaintiff's self-identification as female, plaintiff's booking papers as well as the

commitment order and custodial transfer order issued in her criminal case denote plaintiff's sex

as male.[2]  Id. at ¶¶ 3-8, 10.  Consequently, at HRRJ, plaintiff was housed in the general

population housing unit for male inmates.[3]  Id. at ¶ 9.

Each quarter, HRRJ conducts a search of every housing unit and every inmate.  Id. at ¶

12.  Such a search occurred on December 13, 2018.  Id. at ¶ 13.  On that date, defendant, who is

male, approached plaintiff, who requested that defendant perform the required search in the

privacy of a cell.  Id. at ¶ 15.  Defendant agreed to this request and directed plaintiff to her

housing unit.  Id. at ¶ 16.  Defendant closed the cell door "within an inch" and directed plaintiff

to step to the side of the cell to conduct the search.  Id.  Defendant then conducted a "strip

search" of plaintiff, which consisted of "a visual inspection of the body" after plaintiff

"remove[d] their clothing to expose underclothing, breasts, buttocks, or genitalia."  Id. at ¶ 17

(quoting HRRJ Policy 10.10).  Defendant did not touch or have physical contact with plaintiff

during the search.  Id. at ¶ 19.

## II. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

---

unverified, the allegations it contains cannot be considered as part of the factual record on which
to adjudicate defendant's motion.  See Higgins v. Scherr, 837 F.2d 155, 156-57 (4th Cir. 1988)
("[T]he opponent of a summary judgment motion has a burden of showing ... the existence of a
genuine dispute of material effect and cannot simply rest upon his unverified complaint.").

[2] Plaintiff self-identifies as female, although the record does not indicate that she has physically
or legally changed her sex.  Nonetheless it is appropriate to plaintiff as "she" or "her" because
that is how she identifies.

[3] Plaintiff does not contend that HRRJ's designation of plaintiff to the male housing unit violated
her rights.

2

R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party," and "[a] fact is material if it might affect the outcome of the suit under the governing law." Variety Stores v. Wal-Mart Stores, Inc., 888 F.3d 651, 659 (4th Cir. 2018). Once the moving party has met its burden to show that it is entitled to judgment as a matter of law, the nonmoving party "must show that there is a genuine dispute of material fact for trial... by offering sufficient proof in the form of admissible evidence." Id. (quoting Guessous v. Fairview Prop. Invs., LLC, 828 F.3d 208, 216 (4th Cir. 2016)). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

### III. Analysis

Sgt. Boyer argues that he is entitled to qualified immunity. Qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009). To determine whether a law enforcement official is entitled to qualified immunity, he or she must show (1) that the facts, interpreted in the light most favorable to the plaintiff, do not establish a violation of a constitutional right, or (2) that the alleged right, even if violated, was not "clearly established" at the time of the incident. See id. Accordingly, even where the facts in the record establish that an official's conduct violated a plaintiff's constitutional rights, that officer is nonetheless entitled to immunity "if a reasonable person in the [officer's] position could have failed to appreciate that his conduct would violate those rights." Torchinsky v. Siwinski, 942 F.2d 257, 261 (4th Cir 1991). Importantly, a reviewing court is at liberty to begin

3

its analysis of a qualified immunity defense with either prong of the Pearson test, and success as to either prong is sufficient to find that a defendant is entitled to dismissal from suit. Pearson, 555 U.S. at 234. On this record, summary judgment is appropriate because there is no constitutional violation and because, under the second Pearson prong, defendant is entitled to qualified immunity.

## 1.    Did defendant violate plaintiff's constitutional right?

At the first step of the Pearson qualified immunity inquiry, a court must determine whether, viewing the facts in the light most favorable to plaintiff, defendant's conduct violated a constitutional right. Plaintiff's primary argument is that, in conducting a strip search on her, defendant violated her rights under the Fourth Amendment. See Dkt. No. 4. Specifically, plaintiff cites to Bell v. Wolfish, 441 U.S. 520 (1979), and Byrd v. Maricopa County Sheriff's Dep't, 629 F.3d 1135 (9th Cir. 2011), and appears to argue that she considers the search that occurred to have been an impermissible cross-gender strip search.[4] See Dkt. No. 4. But the evidentiary record at summary judgment does not support such a characterization. Instead, the record demonstrates that plaintiff self-identifies as female, but is repeatedly identified as male on each of the legal documents related to her arrest and incarceration. The record further

---

[4] Although plaintiff cites to these cases she does not explain her reasoning for doing so. Consequently, it is appropriate to infer plaintiff's arguments from the holdings of those cases. In Bell, the Supreme Court upheld a policy which required inmates "to expose their body cavities for visual inspection as a part of a strip search conducted after every contact visit with a person from outside the institution." 411 U.S. at 558. The Supreme Court, in Bell, established a balancing test—described in greater detail supra—for courts to use to determine the reasonableness of searches in the prison context. See id. at 559. Thus, given plaintiff's citation of Bell it appears that plaintiff argues that the search was unreasonable under Bell's test.

Plaintiff also cites Byrd, in which the Ninth Circuit held that a cross-gender strip search which involved significant physical contact in the presence of onlookers and without exigent circumstances was unreasonable. 629 F.3d at 1142. It appears that plaintiff citation to this distinguishable case suggests that she relies on it for its holding regarding cross gender searches.

demonstrates that defendant, a male, escorted plaintiff to her cell where he conducted a visual inspection of plaintiff in a place and manner that prevented the search from being observed by other staff or inmates.

To begin with no cross-gender search occurred in this case, because, although plaintiff identifies as female, on all relevant paperwork she is identified as male and is housed in the male section of the prison housing. Because defendant is male, and because plaintiff is identified on all relevant paperwork as male, the search of plaintiff was by an officer of the same gender. Given these facts, it is quite clear that no constitutional violation occurred in this case. Although lawfully confined prisoners have Fourth Amendment rights, those rights are more limited than the rights of persons who are not incarcerated. See Bell, 441 U.S. at 545-46. Under Bell, courts reviewing claims related to strip searches in the prison context are to consider and balance the scope of the intrusion, the manner in which the search is conducted, the justification for initiating it, and the place in which the search is conducted. Id. at 559. Because the strip search in this case was limited to a visual inspection and involved no physical contact by defendant, and because the search occurred in the privacy of plaintiff's cell away from the eyes of other inmates or staff, the search was not unreasonable under the Fourth Amendment. See Depaola v. Ray, No. 7:12cv139, 2013 WL 4451236, at *12 (W.D. Va. July 22, 2013) (finding limited intrusion of privacy where "searches are visual and involve no touching"); Amaechi v. West, 237 F.3d 356, 364 (4th Cir. 2001) ("[W]e have repeatedly emphasized the necessity of conducting a strip search in private.").

Even assuming, *arguendo*, that the search at issue here is properly described as a cross-gender search as plaintiff contends (it is not), the cases on which plaintiff relies are inapposite and unpersuasive. First, in Byrd, the Ninth Circuit held that a cross-gender search violated the

5

Fourth Amendment where the search involved intimate physical touching by the searching officer of the inmate, unlike the facts of this case. Specifically, the Ninth Circuit focused its decision on how searching officer "touched [the detainee's] inner and outer thighs, buttocks, and genital area with her latex-gloved hand through very thin boxer shorts." Byrd, 629 F.3d at 1142. No such contact occurred during the search at issue in this case; as previously stated, the record demonstrates that the search here was limited to a visual inspection, involved no physical touching and occurred in the privacy of plaintiff's cell. Moreover, in Byrd, the Ninth Circuit recognized other federal cases, including other Ninth Circuit cases, that held that there is no Fourth Amendment violation where officers of the opposite sex viewed prisoners in a state of undress. See Byrd, 629 F.3d at 1142 (citing Grummett v. Rushen, 779 F.2d 491, 496 (9th Cir. 1985)).

Other federal courts have found that cross-gender strip searches of this variety pass constitutional muster and are not per se unconstitutional. See, e.g., Michenfelder v. Sumner, 860 F.2d 328 (9th Cir. 1988) (cross-gender searches not unreasonable if "visual only, involving no touching"); Schmidt v. City of Bella Villa, 557 F.3d 564 (8th Cir. 2009) (unzipping pants to allow photograph of female detainee's tattoo by male officer was not unreasonable); Roden v. Sowders, 84 F. App'x 611 (6th Cir. 2004) (strip search of a male prisoner in presence of female officer did not violate Fourth Amendment); Farkarlun v. Hanning, 855 F. Supp. 2d 906 (D. Minn. 2012) (visual strip search not unreasonable).

In summary, because plaintiff, on this record, is legally a male, even though she self-identifies as female, and resides in the male prison housing unit, no cross-gender search or constitutional violation occurred. But evening assuming *arguendo* that defendant's search was a cross-gender search, that search was not unconstitutional because it was limited to a visual

inspection, it did not involve physical touching, and it was conducted in the privacy of plaintiff's cell. Accordingly, defendant is entitled to summary judgment on this ground.

## 2.  Is defendant entitled to qualified immunity?

Next, it is appropriate to consider whether, assuming *arguendo* that plaintiff's constitutional rights were violated, plaintiff had a clearly established right to be free from the particular type of search at issue in this case at the time the search occurred. Analysis of this question – whether the right was clearly established – properly begins with defining the particularized right at issue in this case. It is a "longstanding principle that clearly established law should not be defined at a high level of generality." White v. Pauly, 137 S.Ct. 548, 552 (2017) (internal quotation omitted). Instead, the "clearly established law must be particularized to the facts of the case so as to avoid transforming qualified immunity into a rule of virtually unqualified liability." Id. (internal quotation omitted). Before concluding that an official has impinged on a clearly established right, the reviewing court must "identify a case where an officer acting under similar circumstances ... was held to have violated [that right]." Id.

As "particularized to the facts of the case," Pauly, 137 S.Ct. at 552, the analysis focuses on whether, at the time of the search in this case, plaintiff, a transgender inmate who identifies as female but is legally classified as male, had a right to be free from a visual strip-search conducted by a male correctional officer.

In determining whether a right is clearly established, a reviewing court must "ask whether, when the defendant violated the right, there existed either controlling authority—such as a published opinion of [the Fourth Circuit]—or a robust consensus of persuasive authority that would have given the defendants fair warning that their conduct was wrongful." Turner v. Thomas, 930 F.3d 640, 644-45 (4th Cir. 2019) (internal quotations omitted). Put another way,

for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011). At base, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 241 (1986).

Although there is a robust body of case law analyzing the constitutional bounds of strip searches and cross-gender searches in prison, little if any case law addresses the issue of the propriety of cross-gender searches of transgender inmates. A review of cases involving cross-gender searches for cisgender inmates, demonstrates that there is no clearly established constitutional right to be free from a visual inspection by an officer of the opposite sex. See, e.g., Michenfelder, 860 F.2d 328.

The district court in the District of Columbia addressed a similar but nonetheless distinct fact pattern in Shaw v. District of Columbia, 944 F. Supp. 2d 43 (D.D.C. 2013). In Shaw, the plaintiff, unlike plaintiff in this case, had undergone sexual reassignment surgery and had taken the necessary steps, under D.C. law, to have her birth certificate amended to change the plaintiff's legal sex to female. Id. at n.4. On these facts, the district court rejected the defendants' claim of qualified immunity, finding that "[t]he flaw in [their] argument is that it fails to account for the fact that plaintiff is legally a female and that the [defendants] knew it." Id. Accordingly, the district court in Shaw, on facts sharply different from those present in this case, held that there was a cross-gender search. Then, in examining the reasonableness of that search, the district court focused on the physical and intrusive nature of the search. The district court found a constitutional violation, noting that "the cross-gender searches of plaintiff did involve intimate physical contact" and that, "unlike the cross-gender searches which other courts have found to be reasonable, the searches were not limited to distant visual observation or

touching of outer garments only." Id. at 57. This case is unlike Shaw in two critically important respects: (i) although plaintiff self-identifies as female, she is legally male; and (ii) defendant did not physically touch or examine plaintiff. Moreover, there is no admissible record evidence in this case that suggests that defendant knew of plaintiff's self-identified transgender status at the time of the challenged search.

Courts recognize that, in the end, "the ultimate question for purposes of qualified immunity is whether a reasonable officer would have known that the searches of plaintiff were unreasonable." Shaw, 944 F. Supp. 2d at 57. Here, plaintiff was, at all relevant times, housed in a male-housing unit and designated as male on her prison records. Accordingly, defendant could not have known that a visual inspection of plaintiff as part of the normal operation of the housing unit would have been unreasonably intrusive or likely to violate the Fourth Amendment. Moreover, it is inappropriate to require prison officials to rely on an inmate's verbal assertion of gender identity, when that assertion is contradicted by all written records. To hold otherwise, would place prison officials in an impossible position. In summary, even assuming that the search a cross-gender search (which it was not), defendant is nonetheless entitled to qualified immunity on the record in this case. Accordingly, summary judgment must be granted in favor of defendant.[5]

---

[5] Defendant is also correct that plaintiff's claim that she was unable to visit Prison Rape Elimination Act ("PREA") officials is unavailing. PREA does not endow litigants with any private cause of action or rights to enforce. See Collen v. Yamaoka, 2015 WL 793085 (D. Haw. Feb. 25, 2015).

## IV. Conclusion

For the reasons set forth above, defendant's motion for summary judgment must be granted and judgment must be entered in favor of defendant.

An appropriate order will issue separately.

The Clerk is directed to provide a copy of this Opinion to all counsel of record and to plaintiff at her last known address.

Entered this _25th_ day of _February_ 2020.

Alexandria, Virginia

T. S. Ellis, III
United States District Judge